UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DUANE D KRUGER,<br><br>          Plaintiff,<br><br>     v.<br><br>JOHN PHELAN, Secretary, Department of<br><br> the Navy<br><br>          Defendant. | CASE NO. 3:23-cv-05932-TMC<br><br>ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Plaintiff Duane Kruger ("Kruger"), a civilian employee at Puget Sound Naval Shipyard ("PSNS") filed this case against defendant John Phelan, Secretary for the Department of the Navy ("the Navy").[1] Kruger alleges that the Navy discriminated against him based on age, retaliated after he complained about the discrimination, and subjected him to a hostile work environment. Dkt. 45 at 5–8. Now before the Court is the Navy's motion for summary judgment

---

[1] At the time Kruger filed this case, the Secretary of the Navy was Carlos del Toro. John Phelan, the current Secretary of the Navy, is automatically substituted for del Toro under Federal Rule of Civil Procedure 25(d). The Clerk is therefore directed to amend the caption to reflect John Phelan as the defendant.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

on all of Kruger's claims. Dkt. 56 at 1. For the following reasons, the Navy's motion is GRANTED in part and DENIED in part.[2]

## II. BACKGROUND[3]

### A. Kruger is hired as a circuit breaker mechanic.

Kruger applied for a position at PSNS in 2010. Dkt. 69 ¶ 3. Kruger was an Army reservist and had "over 20 years of experience as a lineman, electrician, operator, supervisor, and part-owner of a utility construction company." *Id.* ¶ 2; Dkt. 45 ¶ 4.1. Kruger was hired, but the Army called him into active duty before he received a start date for the new position. Dkt. 69 ¶ 3; Dkt. 45 ¶ 4.1. Kruger returned from active duty several years later and began working for PSNS in October 2014 as a "WG-5 [C]ircuit [B]reaker [M]echanic in Shop 51." Dkt. 69 ¶ 3. Kruger, now 65 years old, was 54 years old in October 2014. Dkt. 45 ¶ 4.1; Dkt. 69 ¶ 1.

WG-5 mechanics, like Kruger, are assigned to work either "inside," repairing electrical components on a bench, or "on the waterfront," where they repair electrical components directly on the vessels. Dkt. 69 ¶ 8. Both jobs are physically demanding because they require lifting heavy equipment, but the "waterfront" jobs are more so, as they require more "walking and working in confined spaces on vessels." *Id.* Kruger was initially assigned to an "inside job." *Id.* ¶¶ 8–9.

---

[2] Kruger's operative complaint also contains disability discrimination and retaliation claims under the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* Dkt. 45 at 7–8. In his opposition to the Navy's motion for summary judgment, Kruger stipulated to the dismissal of these claims because he "did not sufficiently seek a formal accommodation" for his disability. Dkt. 72 at 23. Accordingly, the Court will only consider the discrimination, retaliation, and hostile work environment claims based on age. The Court appreciates Kruger's effort to "focus" its "attention and review" and dismisses his claims under the Rehabilitation Act. *Id.*

[3] The following background facts are either undisputed or viewed in the light most favorable to Kruger, the non-moving party. *Davis v. Team Elec. Co.*, 520 F.3d 1080 (9th Cir. 2008).

Between 2014 and 2020, Kruger applied for "at least six WG-8 and WG-10 positions." *Id.* ¶ 10. Despite having a certification for "High Voltage Verification," he was not selected for those positions. *Id.*

### B. Hiring practices in Shop 51

Announcements for promotions to WG-8 and WG-10 positions are posted "every year." Dkt. 58 ¶ 7. This process starts with an announcement on the website USA JOBS. *Id.* Once the deadline lapses, human resources staff create a list of everyone who applied for the position and meets the minimum eligibility requirements. *Id.* Each eligible applicant's supervisor then receives an evaluation sheet requiring the supervisor to rate the applicant from 1–5 on different metrics. *Id.* After those evaluation sheets are returned, applicants who received an average rating of 3 or more are interviewed for the position. *Id.* In addition to being advertised on USA JOBS, these opportunities would be emailed directly to current employees, discussed at the morning muster meetings, and a printed copy of the post would be set atop the muster table for everyone to see. Dkt. 69 ¶ 11; Dkt. 57-15 at 3; Dkt. 57-3 at 2. According to Kruger, recruitment through the morning muster meetings and the email distribution list were "the most common way" that current employees learned about the promotion opportunities. Dkt. 69 ¶ 11.

### C. COVID-19 pandemic and the April 13, 2020 promotion announcement

In March 2020, at the onset of the COVID-19 pandemic, PSNS announced a new leave policy for employees at high risk of contracting the virus. Dkt. 58 ¶ 8; Dkt. 69 ¶ 14. The parties disagree about what the announcement entailed. Seth Fraizer ("Fraizer"), Project Workforce Manager at PSNS, describes the announcement as a voluntary opportunity for employees to take administrative leave. Dkt. 58 ¶ 8. Kruger claims that he understood it to be "involuntary administrative leave or furlough" for all employees who were at least sixty years old or high risk. Dkt. 69 ¶ 15. Following the announcement, Kruger took administrative leave from mid-March to

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

June 24, 2020. Dkt. 69 ¶¶ 14, 20. The Navy concedes that age was one basis for the high-risk administrative leave. Dkt. 56 at 4.

Shop 51 had "approximately 450 employees," but in March 2020, "a little over 200 people" went on administrative leave. Dkt. 58 ¶¶ 4, 8. For those who remained, "it was a chaotic and stressful time," as PSNS continued with the same workload but "half the employees." *Id*. As a Project Workforce Manager at PSNS, Fraizer was the "hiring manager" and in charge of hiring new employees as well as "promoting [the shop's] current employees." Dkt. 57-6 at 2–3. The early months of the COVID-19 pandemic were "particularly chaotic" for him as he had to "juggle the constantly changing COVID policies and track/manage paperwork for those 200+ employees" on administrative leave. Dkt. 58 ¶ 9. According to Fraizer, with so many out and the list of those out always changing, he struggled to know who was out and what their status was. *Id*.

Fraizer testified that despite not knowing how long COVID-19 restrictions and administrative leave would last, he wanted to "be consistent" and moved forward with the "established yearly promotion opportunity announcement." *Id.* ¶ 10. Fraizer stated that in April, he tried to open a new announcement for spring 2020 promotion opportunities on USA JOBS, but he was told not to create a new announcement because Naval Base Kitsap (the multi-site base that encompasses PSNS) had a long-term announcement that was still open. *Id.* ¶ 11; Dkt. 57-15 at 3; Dkt. 57-6 at 54 ("I had submitted the paperwork for the short-term announcement and [human resources] had e-mailed me back saying . . . there is a long-term announcement available, you need to use that instead.").

On April 13, management at PSNS sent the long-term announcement by email to the "work email distribution list." Dkt. 58 ¶ 12; Dkt. 69 ¶ 17. Because Kruger was on administrative leave, he did not receive the announcement sent out by email and discussed at the morning

meeting. Dkt. 69 ¶ 17. The position closed and the list of certified applicants was pulled just a few weeks later, on May 5, while Kruger remained on leave. *See id.* According to Frazier, he intended for individual supervisors to share the announcement with employees who were on administrative leave. Dkt. 58 ¶ 12. Kruger's "first-line manager" was also on leave, and a different manager, Jeremy Alexander, served as his supervisor on a temporary basis. Dkt. 59 ¶¶ 2–4. Alexander testified that he could "not recall many details" about the April 2020 announcement. *Id.* ¶ 5. Although he believed that "[h]ad I remembered, I would have made an effort to inform my assigned team members," he acknowledged that "it is certainly possible I may have forgotten" and he did "not have a clear memory of speaking to Mr. Kruger." *Id.*

### D. Kruger returns to work from administrative leave

In September 2020, Kruger learned that other employees had been promoted in his absence and brought up his concerns to the Equal Employment Opportunity (EEO) Office, alleging that he was discriminated against based on age.[4] Dkt. 69 ¶¶ 20–21; Dkt. 57-18; Dkt. 57-12 at 1–3. Kruger took some "annual leave" to "begin this process." Dkt. 69 ¶ 21. When Kruger returned to work the next month, he was "no longer building circuit breakers" but was reassigned to "more menial duties for other mechanics." *Id.* ¶ 22.

Kruger was then reassigned to "Firewatch," a waterfront job where he surveyed the area surrounding welders to make sure it was safe from fires. *Id.* ¶ 23. He completed the Firewatch training in December and started as a Firewatch after returning from the New Year holiday. *Id.*

In June 2021, Kruger was reassigned again. *Id.* ¶ 24. This time Kruger worked as a "strider," another waterfront job where he transported "consumable items to hubs on the

---

[4] This would eventually become the formal complaint for Agency No. 21-4523A-00004/EEOC No. 550-2021-00361X. Dkt. 69 at 1. On April 27, 2022, an administrative judge dismissed the complaint. Dkt. 57-18 at 1.

waterfront." *Id.* For nearly two years, he was able to use a robust golf cart-like vehicle called a "scooter" to help him move items around. *Id.*; Dkt. 57-4 at 9. However, the scooter was taken from Kruger in June 2023, and he was required to deliver items by foot across the waterfront. Dkt. 69 ¶ 24.

### E.    August 2022 promotion opportunity and second EEO complaint

Kruger applied for an open WG-8 position on August 4, 2022. *Id.* ¶ 27. He was never interviewed for it and later learned the opening had been cancelled. *Id*. In December, Kruger submitted a formal complaint to the EEO.[5] Dkt. 57-19 at 3. This complaint initially concerned PSNS's failure to interview him for the WG-8 position but was later amended to include the waterfront reassignments. Dkt. 57-19 at 2; Dkt. 69 ¶ 35; Dkt. 57-26. One of Kruger's supervisors at the time, Ryan Cole, testified in his deposition that he was told Kruger could not be moved back from the waterfront to Shop 51 because "Mr. Kruger had filed a complaint against Shop 51 management." Dkt. 57-4 at 19.

### F.    The instant case

Proceeding *pro se*, Kruger filed his initial complaint with the Court on October 19, 2023. Dkt. 2. The Court granted the Navy's first motion to dismiss and gave Kruger leave to file an amended complaint. Dkt. 23. The Court granted the Navy's second motion to dismiss in part, allowing the age discrimination and retaliation claims to survive, and gave Kruger leave to file another amended complaint. Dkt. 38. The operative complaint was filed on September 16, 2024. Dkt. 45. Kruger later obtained counsel and the Court extended the case schedule to allow counsel

---

[5] This complaint would be Agency No. 23-4523A-00200 / EEOC No. 551-2024-00021X. Dkt. 69 at 1; Dkt. 57-19 at 1. It was later dismissed by an administrative judge. Dkt. 57-26 at 2. Kruger filed a notice of appeal on May 27, 2024. Dkt. 75-5 at 2. The Office of Federal Operations affirmed the dismissal on August 5, 2025. Dkt. 57-26 at 4.

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

additional time to complete discovery. Dkt. 51; Dkt. 52. The Navy moved for summary judgment on August 18, 2025. Dkt. 56.

### III.  DISCUSSION

**A.  Legal standards**

*1.  Summary judgment*

"Summary judgment is proper only if the evidence, when viewed in the light most favorable to the non-moving party, shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gnassi v. del Toro*, No. 3:20-CV-06095-JHC, 2022 WL 3867376, at *4 (W.D. Wash. Aug. 30, 2022) (quoting Fed. R. Civ. P. 56(a)) (internal quotation marks omitted). A "material fact" is one that may affect the case's outcome. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A factual dispute is 'genuine' if the evidence is such that reasonable persons could disagree about whether the facts claimed by the moving party are true." *Gnassi*, 2022 WL 3867376, at *4 (quoting *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983)). "The Court must draw all reasonable inferences in favor of the non-moving party." *Microsoft Corp. v. Internal Revenue Serv.*, No. C15-1605-RSM, 2023 WL 255831, at *3 (W.D. Wash. Jan. 18, 2023).

"The moving party bears the initial burden of showing that there is no genuine issue of material fact and that they are entitled to prevail as a matter of law." *Gnassi*, 2022 WL 3867376, at *4 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "If the moving party meets its burden, then the non-moving party must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of their case that they must prove at trial." *Id.* (quoting *Galen v. Cnty. of Los Angeles*, 477 F.3d 652, 658 (9th Cir. 2007)) (cleaned up).

This case concerns discrimination by an employer. The Ninth Circuit "has set a high standard for the granting of summary judgment in employment discrimination cases." *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996). "[V]ery little evidence" is required to withstand summary judgment in a discrimination case. *Id.* (quoting *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1564 (9th Cir. 1994)). This is because "the ultimate question is one that can only be resolved through a 'searching inquiry'—one that is most appropriately conducted by the factfinder, upon a full record." *Id.* (quoting *Lam*, 40 F.3d at 1564). The Ninth Circuit has also "emphasized the importance of zealously guarding an employee's right to a full trial, since discrimination claims are frequently difficult to prove without a full airing of the evidence and an opportunity to evaluate the credibility of the witnesses." *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1112 (9th Cir. 2004).

### 2. Age Discrimination in Employment Act

Additionally, this case concerns discrimination by an employer based on age. Kruger's claims are brought under the Age Discrimination in Employment Act ("ADEA"). Dkt. 45 ¶¶ 5.4, 6.5, 8.5. The federal-sector provision of the ADEA provides that (with few exceptions) "all personnel actions affecting employees or applicants for employment who are at least 40 years of age" must "be made free from any discrimination based on age." 29 U.S.C. § 633a(a). The Supreme Court has held that this plain language "demands that personnel actions be untainted by any consideration of age." *Babb v. Wilkie*, 589 U.S. 399, 402 (2020). But to obtain certain forms of relief, "including hiring, reinstatement, backpay, and compensatory damages," the plaintiff "must show that age was a but-for cause of the challenged employment decision." *Id.*

One way for a plaintiff to make a sufficient showing at the summary judgment stage is through the burden-shifting evidentiary framework of *McDonnell Douglas Corp. v. Green*. 411 U.S. 792, 802–04 (1973); *see Caldrone v. Circle K Stores Inc.*, --- F.4th ---, 2025 WL 2811320,

at *3 (9th Cir. Oct. 3, 2025). Under the *McDonnell Douglas* framework, the plaintiff bears the initial burden of establishing a *prima facie* case creating an inference of discrimination. 411 U.S. at 802. If the plaintiff meets their initial burden, then the burden shifts to the employer defendant to produce a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* If the defendant meets this burden, the plaintiff "must then raise a triable issue of material fact as to whether the defendant's proffered reasons . . . are mere pretext for unlawful discrimination." *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010).

### B. Kruger's discrimination claims

#### 1. *Disparate treatment claims prior to spring 2020*

Kruger alleges that between 2014 and 2020 he applied for "at least six WG-8 and WG-10 positions" but "[t]o the best of his knowledge, each of these positions was filled by individuals significantly younger than Kruger." Dkt. 45 ¶ 4.8. The Navy argues that these claims are time barred and have yet to be exhausted under the administrative process. Dkt. 56 at 13–14. Kruger's brief does not address this argument (or any claims that arose before 2020).

"Unlike Title VII of the Civil Rights Act, the ADEA contains no express requirement that a federal employee complainant seek administrative relief, except that an employee who wishes to file suit without pursuing administrative remedies must give the EEOC notice of intent to sue at least 30 days before filing suit." *Bankston v. White*, 345 F.3d 768, 770 (9th Cir. 2003) (citation modified); *see* 29 U.S.C. § 633a(d) (requiring notice to EEOC "within one hundred and eighty days after the alleged unlawful practice occurred"); 29 C.F.R. § 1614.201(a). "Federal law does, however, allow an employee the option of pursuing administrative remedies, either through the agency's EEO procedures, or through the Merit Systems Protection Board." *Bankston*, 345 F.3d at 770 (citation modified).

Here, there is no evidence in the record that Kruger either provided timely notice to the EEOC of his intent to sue or pursued administrative remedies for his disparate treatment claims that arose prior to spring 2020. Therefore, the Court grants the Navy's motion for summary judgment as to Kruger's age discrimination claims concerning allegations prior to the April 2020 promotion opportunity.

### 2. *April 2020 promotion opportunity – disparate treatment claim*

As a preliminary matter, the parties do not dispute that Kruger's disparate treatment claim concerning the April 2020 promotion opportunity is timely and exhausted. Dkt. 56 at 12; Dkt. 72 at 22. As discussed above, one way for a plaintiff to defeat a summary judgment motion on an ADEA claim is through the *McDonnell Douglas* framework. *Caldrone*, 2025 WL 2811320, at *3; *see supra* Section II.A.2. Under this framework, Kruger must first establish a *prima facie* case under the ADEA. *Gnassi*, 2022 WL 3867376, at *5. This requires Kruger to show that: (1) he was at least forty years old; (2) he was qualified for the position; (3) he was denied the position; and (4) "the position was filled by a substantially younger applicant." *Id.*

The Navy does not contest that Kruger has made a *prima facie* case. Dkt. 74 at 2. The Court agrees. Kruger has made a sufficient showing that: (1) he was sixty years old at the time of the April 2020 promotion opportunity; (2) as a WG-5, he was qualified for the WG-8 promotion; (3) he was denied the promotion because he was never notified of the opportunity; and (4) most of those receiving the WG-8 promotion were younger than Kruger. Dkt. 72 at 28; Dkt. 69 ¶¶ 17–19; Dkt. 69-4; Dkt. 69-6; Dkt. 69-8; Dkt. 69-9; *see also Caldrone*, 2025 WL 2811320, at *4 (holding that ADEA plaintiffs could establish *prima facie* case without applying for job when they did not have opportunity to apply).

The burden then shifts to the Navy to articulate legitimate, nondiscriminatory reasons for not selecting Kruger. *Shelley*, 666 F.3d at 608. Kruger, for purposes of the instant motion only,

concedes that the Navy has articulated a legitimate nondiscriminatory reason, which was the "mistake" of not following up with employees on administrative leave due to the chaos of the initial months of the COVID-19 pandemic. Dkt. 58 ¶¶ 8–12; Dkt. 72 at 29–30.

The burden shifts back to Kruger "to raise a genuine factual question as to whether the proffered reason is pretextual." *Shelley*, 666 F.3d at 609. Kruger can demonstrate pretext (1) "directly, by showing that unlawful discrimination more likely [than not] motivated the employer"; (2) "indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable"; or (3) via "a combination of the[se] two kinds of evidence." *Opara v. Yellen*, 57 F.4th 709, 723 (9th Cir. 2023) (quoting *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1127 (9th Cir. 2000)). "Very little evidence" is needed to "raise a genuine issue of fact regarding an employer's motive"; just a *prima facie* case combined with evidence that the employer's justification may be false could be enough. *Id.* at 723–724 (quoting *McGinest*, 360 F.3d at 1124).

Kruger argues that he can establish pretext because PSNS departed from its standard recruitment practices with its April 2020 promotion process. Dkt. 72 at 30–31. These deviations include making the announcement while half the workforce was on administrative leave (and those who were on leave were primarily older workers or those with certain health conditions) and using a preexisting long-term announcement when PSNS customarily creates its own. *Id.* at 31 (citing Dkt. 58 ¶ 11). Given the chaos of the early months of the COVID-19 pandemic, a reasonable factfinder may readily accept PSNS's explanation. But very little evidence is required to survive summary judgment in a discrimination case. *Schnidrig*, 80 F.3d at 1410. "Deviation from established policy or practice may be evidence of pretext." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1214 (9th Cir. 2008) (quoting *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 29 (1st Cir. 1998)). Kruger has established a genuine factual question as to whether the

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

Navy's proffered reason is pretextual with Fraizer's testimony about changing the procedure during the April 2020 promotion process, combined with evidence that management knew older workers including Kruger were more likely to be on administrative leave and not receive the announcement. Dkt. 58 ¶¶ 8, 12; Dkt. 57-6 at 9–10, 14–16; Dkt. 57-13 at 8–9; Dkt. 57-15 at 3–4. Accordingly, the Court denies the Navy's motion for summary judgment as to Kruger's disparate treatment age discrimination claim concerning the April 2020 promotion opportunity.

### 3. April 2020 promotion opportunity – disparate impact claim

Kruger's response brief also discusses a claim of disparate impact with regards to the April 2020 promotion opportunity. Dkt. 72 at 31. The "disparate-impact theory of liability" is available to plaintiffs under the ADEA. *Smith v. City of Jackson*, 544 U.S. 228, 240 (2005); *Barnes v. O'Malley*, No. 23-15859, 2024 WL 1461366, at *1 (9th Cir. Apr. 4, 2024) ("Disparate impact is one of the theories that can form the basis for an age discrimination claim."). "In order to make out a case for disparate impact under the ADEA, a plaintiff must (1) identify an occurrence of certain outwardly neutral employment practices, and (2) show that there was a significantly adverse or disproportionate impact on persons of a certain age because of that employment practice." *Barnes*, 2024 WL 1461366, at *1; *Katz v. Regents of the Univ. of Calif.*, 229 F.3d 831, 835 (9th Cir. 2000).

Kruger argues that he has established a *prima facie* case of disparate impact liability by demonstrating that PSNS conducted a promotion process while employees who were sixty years of age and older were on administrative leave. Dkt. 72 at 31–32; Dkt. 69 ¶ 15; Dkt. 57-15 at 2–3. In response, the Navy argues that Kruger's disparate impact claim may not proceed because Kruger raised it for the first time in his opposition brief. Dkt. 74 at 5. The Court agrees. Kruger's complaint makes no mention of the disparate impact claim. *See* Dkt. 45. This claim is mentioned for the first time in Kruger's opposition to the Navy's motion for summary judgment. Dkt. 72 at

31–32. Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to "give the defendant fair notice of what [his] claim is and the grounds upon which it rests." *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)). Allegations "presented for the first time in [an] opposition to summary judgment" do not give proper notice. *Id.* at 969; *Mokiao v. Hawaiian Elec. Light Co.*, No. 23-16084, 2024 WL 4511611, at *2 (9th Cir. Oct. 17, 2024). Accordingly, the Court grants the Navy's motion for summary judgment as to Kruger's disparate impact age discrimination claim concerning the April 2020 promotion opportunity.

        **C.**        **Kruger's retaliation and hostile work environment claims**

              *1.*        *Kruger's claims were exhausted at the time of his first amended complaint in April 2024.*

Before addressing the merits of Kruger's retaliation and hostile work environment claims concerning his reassignments to waterfront jobs, the Court must consider the Navy's arguments that these claims are time barred or were not exhausted through the administrative process. Dkt. 56 at 21–22; Dkt. 72 at 23–27.

As discussed previously, under the ADEA, a federal employee may choose either to pursue administrative remedies, or to file suit directly in district court after giving the EEOC at least 30 days' notice of his intent to sue. *Bankston*, 345 F.3d at 770. That notice to the EEOC, however, must be given "within one hundred and eighty days after the alleged unlawful practice occurred." 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.201(a). Here, there is no evidence that Kruger gave notice of his intent to sue to the EEOC within one hundred and eighty days after any of the alleged unlawful practices. He may therefore only pursue claims that were exhausted through the administrative EEO process.

But the administrative process also allows plaintiffs to file a civil action in court if enough time has passed without agency action on their case. Relevant here, a plaintiff may file "a civil action in an appropriate United States District Court . . . [a]fter 180 days from the date of filing an individual or class complaint if agency final action has not been taken." 29 C.F.R. § 1614.407(b).

The parties appear to agree that Kruger's claims about his reassignment were not part of his first EEO complaint or investigation. *See generally* Dkt. 57-12; Dkt. 57-13. But Kruger argues that these claims were exhausted through his second EEO complaint. *See* Dkt. 68 at 23–24. Kruger filed his second EEO complaint on December 30, 2022. Dkt. 57-19 at 4. He amended that EEO complaint to include allegations of harassment and retaliation on July 31, 2023 and August 31, 2023. Dkt. 69-13 at 1–6.

Kruger first filed this civil action in October 2023. Dkt. 1. This Court found that Kruger's first complaint did not include sufficient facts but allowed him leave to amend. Dkt. 23. But Kruger's amended complaint, filed on April 4, 2024, clearly encompassed claims of retaliation and hostile work environment for his prior EEO activity. Dkt. 24 at 6–8. In July 2024, this Court denied the Navy's motion to dismiss the retaliation claims and allowed Kruger further leave to amend if he wished to add additional facts to support his hostile work environment claim. Dkt. 38. The Court therefore concludes that the relevant pleading for analyzing exhaustion of the retaliation and hostile work environment claims is the amended complaint on April 4, 2024.

At that point, it had been more than 180 days since Kruger had amended his second EEO complaint, and no final agency action had yet occurred. *See* Dkt. 69-13 at 1–6; Dkt. 75-5 at 3 (action was not taken by agency until April 29, 2024). Kruger was therefore permitted to file his claims in federal court under 29 C.F.R. § 1614.407(b).

Although the parties' arguments focus on the later amended complaint in September 2024, the Navy argues generally that because the agency eventually did take a final action, and Kruger appealed it, that should undo his earlier ability to file a civil lawsuit. *See* Dkt. 74 at 7–8. That argument is unpersuasive. The plain language of the regulation allows the complainant to "file a civil action . . . After 180 days from the date of filing an individual or class complaint if agency final action has not been taken." 29 C.F.R. § 1614.407(b). Kruger did that, while litigating pro se. He should not be penalized for believing, when he later received the agency's decision, that he needed to preserve his appeal, and the Navy has not cited any authority that would compel that result.[6]

### 2. *Reassignments to waterfront jobs – retaliation claim*

Kruger's reassignments to waterfront jobs from 2021 to 2024 are "the focus of his" retaliation claim. Dkt. 68 at 33. A plaintiff may also overcome summary judgment on a retaliation claim using the *McDonnell Douglas* framework. *Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir. 1986). Under this framework, Kruger must first establish a *prima facie* case of unlawful retaliation. *Id.* If established, the burden shifts to the Navy to articulate a legitimate, non-retaliatory explanation for the action. *Id.* If the Navy rebuts the inference of retaliation, the burden shifts back to Kruger to show that its explanation was merely a pretext. *Id.*

To establish a *prima facie* case of retaliation under the ADEA, Kruger must show that 1) he engaged in a protected activity; 2) he suffered an adverse employment decision; and 3) there was a causal link between the protected activity and the adverse employment decision. *Poland v. Chertoff*, 494 F.3d 1174, 1180 (9th Cir. 2007).

---

[6] Furthermore, because a decision on the appeal was issued on August 5, 2025, even if the Navy was correct that the claims were unexhausted, Kruger remains even now within the 90-day window to file a civil action after receiving that decision, and the Court would allow him leave to amend his complaint to avoid piecemeal litigation. *See* Dkt. 57-26; 29 C.F.R. § 1614.407(c).

ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

The Navy does not dispute whether Kruger can establish a *prima facie* case. Kruger engaged in a protected activity when he made his complaint about the April 2020 promotion opportunity with the EEO. *Miller*, 797 F.2d at 731 ("[T]he filing of discrimination charges with the EEOC constituted a protected activity."). Kruger suffered an adverse employment decision when he was reassigned to more burdensome jobs by the waterfront. Dkt. 69 ¶ 8; *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 359 (2024) (holding that to prove a job transfer was discriminatory, a plaintiff must show "the transfer left her worse off, but need not have left her significantly so"); *Ray v. Henderson*, 217 F.3d 1234, 1241 (9th Cir. 2000) (holding that a transfer of job duties may constitute an adverse employment action). Lastly, causality can be established in two ways. First, the reassignments occurred soon after Kruger made his complaint, and causation "may be inferred from proximity in time between the protected action and the allegedly retaliatory employment decision." *Ray*, 217 F.3d at 1244 (citation modified). Kruger's initial EEO contact was September 28, 2020, and his managers were interviewed about his EEO complaint in October and November 2020. Dkt. 69-10 at 2; *see* Dkt. 69-11. The next month, he was reassigned to Firewatch in December 2020, and he remained in waterfront job assignments throughout much of the pendency of his EEO proceedings. Dkt. 58 at 5; Dkt 57-1 at 32. This is close enough in time to establish causation. *See, e.g.*, *McGuire v. State of Washington*, No. C09-5198RJB, 2010 WL 1286830, at *7 (W.D. Wash. Mar. 26, 2010) (concluding that adverse action "within a short period of time (a few months)" created a genuine factual dispute). Second, a Shop 51 supervisor testified that he was told Kruger could not go back to his inside job at Shop 51 because he "filed a complaint against [] management." Dkt. 57-4 at 19. The Court finds that Kruger has established a *prima facie* case of retaliation with his reassignments to waterfront jobs.

The burden thus shifts back to the Navy to articulate a legitimate, non-retaliatory explanation for the action. *Miller*, 797 F.2d at 731. According to Fraizer's testimony, Shop 51

was low on work, the welders needed fire-watch qualified workers, and Kruger had the necessary qualifications. Dkt. 58 ¶ 13. Fraizer further explained that after the "fire-watch loans," Shop 51's workload was still low, and there was "a request from the expediters from Shop 06 for loans from our shop." *Id.* ¶ 14. This is sufficient to articulate a legitimate and nonretaliatory explanation.

The burden then shifts back to Kruger to "raise a genuine factual question whether" the Navy's "stated reason is in reality a mere pretext." *Miller,* 797 F.2d at 732. The Navy argues that Kruger cannot establish pretext because he cannot show he was singled out with the reassignments. Dkt. 74 at 9. For example, twelve others were assigned to Firewatch with Kruger. *Id.* This argument is unpersuasive for several reasons, each raising a "genuine factual question" about the Navy's nonretaliatory explanation. First, Fraizer testified that he assigned Kruger to Firewatch because Kruger had the necessary qualifications for the job. Dkt. 58 ¶ 13. But Kruger testifies that he did not have the qualifications for Firewatch and had to complete a training before beginning the new job. Dkt. 69 ¶ 23. Second, as explained above, a reasonable factfinder could conclude from supervisor Cole's testimony that Kruger was not returned to Shop 51 because he "filed a complaint against [] management." Dkt. 57-4 at 18. Accordingly, the Court denies the Navy's motion for summary judgment as to Kruger's retaliation claim concerning his reassignments to waterfront jobs.

### 3. *Reassignments to waterfront jobs – hostile work environment claim*

Kruger's reassignments to waterfront jobs from 2021 to 2024 are also "the focus of his" hostile work environment claim. Dkt. 68 at 33. "Analysis of a hostile work environment claim is identical under the ADEA and Title VII, except that the harassment must be shown as motivated by age, rather than the protected classes enumerated in Title VII." *Brooks-Joseph v. City of Seattle*, 697 F. Supp. 3d 1085, 1102 (W.D. Wash. 2023) (quoting *Richardson v. Hilton Resorts*

*Corp.*, No. C18-340LEK-RLP, 2019 WL 1440248, at *4 (D. Haw. Mar. 29, 2019)). Under the ADEA, Kruger must show that (1) he was subjected to verbal or physical conduct of an age-related nature; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive work environment. *Williams v. Cmty. Psychiatric Clinic*, 33 F. App'x 852, 853 (9th Cir. 2002) (citing *Gregory v. Widnall*, 153 F.3d 1071, 1074 (9th Cir.1998)).

      Kruger's claim fails on the first prong. Even if a pattern of job reassignments were considered harassing conduct, Kruger has not pointed to any evidence in the record from which a reasonable factfinder could conclude that conduct was based on his age. And Kruger's evidence that the reassignments were due to his EEO complaint goes to his retaliation claim, not a hostile work environment claim. Although Kruger points out that a plaintiff may bring a hostile work environment claim motivated by retaliation, *see Ray*, 217 F.3d at 1244–46, those claims typically arise when an employee is subjected to a pattern or verbal or physical harassment because of their protected activity. For example, in *Ray*, after the plaintiff complained about the treatment of women at his post office, "he was targeted for verbal abuse related to those complaints for a period lasting over one and [a] half years," including being yelled at; called "a liar, a troublemaker, and a rabble rouser," being told to shut up; being subjected to pranks; and being falsely accused of misconduct. *Id.* at 1245. Here, the theory of Kruger's reassignment claim is that he was loaned out to less desirable jobs because of his EEO complaint. This is a standard adverse-action retaliation theory, not a hostile work environment. The Navy's motion for summary judgment on Kruger's hostile work environment claim is therefore granted.

## IV.   CONCLUSION

      For the reasons explained above, the Navy's motion for summary judgment is GRANTED as to the following claims:

- Disparate treatment age discrimination claims concerning allegations prior to the April 2020 promotion opportunity,
- Disparate impact age discrimination claim concerning the April 2020 promotion opportunity,
- Hostile work environment claim concerning Kruger's reassignments to waterfront jobs.

However, the Navy's motion for summary judgment is DENIED as to the following claims:

- Disparate treatment age discrimination claim concerning the April 2020 promotion opportunity,
- Retaliation claim concerning Kruger's reassignments to waterfront jobs.

Consistent with the Court's previous order granting a stay in this case due to the lapse in appropriations for the Department of Justice, the parties are directed to file a joint status report proposing a new trial date and schedule for the remaining pretrial deadlines within five business days of an end to the lapse in appropriations. See Dkt. 78. The parties may also inform the courtroom deputy by email if they mutually agree that this case would benefit from a settlement conference with a Magistrate Judge.

Finally, the Clerk is respectfully requested to amend the caption to reflect John Phelan, the current Secretary of the Navy, as the defendant. *See* Fed. R. Civ. P. 25(d).

Dated this 29th day of October, 2025.

Tiffany M. Cartwright
United States District Judge